IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARISSA C. PEREZ-LEEDS,

        Plaintiff,

v.                                                                                      CIV 13-0185 KBM

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION & ORDER

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to have me serve as the presiding judge and enter final judgment. *See Docs. 4, 6, 7.* Having carefully reviewed the parties' positions and the material portions of the record, the Court denies the motion to remand and dismisses this action with prejudice

Plaintiff filed initial applications with the Social Security Administration for Title II and XVI benefits under the Social Security Act on April 27, 2011, with an alleged onset of disability beginning on October 26, 2010. *AR* at 63-84.[1] Her applications were denied on September 6, 2011, and again upon reconsideration on November 22, 2011. *Id*. Administrative Law Judge Ben Willner ("the ALJ") held a *de novo* hearing on June 28, 2012, at which a vocational expert testified and Attorney Gary Martone represented Plaintiff. *Id.* at 11, 25-60. On October 17, 2012, the ALJ issued a Decision, determining

---

[1] Documents 14-1 through 14-11 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

that Plaintiff was not disabled. *Id.* at 8-24. Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council; however, the Council declined this request on January 10, 2013. *Id.* at 1-3. As such, the ALJ's Decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 459 (10th Cir. 2003).

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner is required to use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

At Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 13. At Step Two, he determined that Plaintiff had the severe impairments of obesity, affective disorder, borderline intellectual functioning, and anxiety. *Id.* At Step Three, he concluded that Plaintiff's impairments did not meet or medically equal the regulatory "listings." *Id.* at 14. At Step Four, he assessed Plaintiff's residual functional capacity ("RFC"), finding an RFC that allowed Plaintiff to perform a full range of work at all exertional levels but with certain nonexertional limitations, such as only involving simple tasks, working primarily with things rather than people, and maintaining concentration, pace, and persistence for a two-hour period before taking regularly scheduled breaks. *Id.* at 15. The ALJ also determined that Plaintiff could not perform her past relevant work. *Id.* at 18. However, at Step Five, the ALJ determined that jobs existed in the

national economy that Plaintiff *could* perform. *Id.* at 19. Accordingly, the ALJ determined that Plaintiff was not disabled. *Id.*

The first two steps of the sequential evaluation are not at issue in this appeal. However, Plaintiff alleges that the ALJ erred at Step Three and Step Four by not properly analyzing and considering all the relevant evidence in the record and at Step Five by not investigating a conflict between the vocational expert's testimony and the Dictionary of Titles ("DOT") descriptions. *Doc. 18* at 3. The general inquiry is whether the ALJ applied the correct legal standards, and whether his decision is supported by substantial evidence. *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012). A deficiency in either area is grounds for remand. Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence, substituting its own discretion for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

**A.  The ALJ Properly Found that Plaintiff Did Not Meet a Listing.**

An ALJ must determine, at Step Three, whether the objective medical evidence shows that a claimant satisfies the criteria of one or more listed impairments. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The "Listing of Impairments" ("Listings") enumerates the conditions considered to be severe enough to prevent the claimant from performing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). A claimant is *per se* disabled if her disability is equal to or more severe

than an impairment in the Listings. *Knipe v. Heckler*, 755 F.2d 141, 146 (10th Cir. 1985).

Plaintiff claims that the ALJ did not have substantial evidence to determine that she failed to meet Listing 12.04, for affective disorders, and Listing 12.06, for anxiety related disorders. *Doc. 18* at 3. The Commissioner, in contrast, maintains that Plaintiff failed to establish that she manifests the requisite criteria for these Listings. *Doc. 19* at 4. Plaintiff has the burden to demonstrate the presence of a particular mental disorder, as described in the "A" criteria of Listings 12.04 and 12.06, and she must also establish that the impairment-related functional limitations are incompatible with the ability to do any gainful activity in the "B" or "C" criteria of these Listings. *See* 20 C.F.R. pt. 404, Subpt. P, App. 1, §§ 12.00A, 12.04 & 12.06. Plaintiff alleges that the ALJ erred in finding that she did not satisfy the "B" criteria of the Listings. *Doc. 18* at 3. The Commissioner maintains that the ALJ conducted a "thorough and well-founded analysis" and properly found that Plaintiff failed to satisfy her burden under the "B" criteria. *Doc. 19* at 5.

The "B" criteria for both Listings require a claimant to show that her impairment resulted in at least two of the following: "1) Marked restriction of activities of daily living; or 2) Marked difficulties in maintaining social functioning; or 3) Marked difficulties in maintaining concentration, persistence, or pace; or 4) Repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ 12.04B, 12.06B. The ALJ determined that Plaintiff had *moderate* limitations in her activities of daily living, in her social functioning and in her concentration, persistence and pace. *AR* at 14. Plaintiff maintains that, in doing so, the ALJ ignored contrary

evidence and lacked substantial evidence to support his findings of moderate limitations in these domains.[2]

First, Plaintiff contends that the ALJ erred in assessing the severity of her restrictions of activities of daily living. She argues that, under Tenth Circuit law, Plaintiff's "ability to care for her children and do some housework with extra assistance is not evidence that she is not disabled." *Doc. 20* at 1 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) and *Berryhill v. Barnhart*, 64 Fed. Appx. 196 (10th Cir. 2003)). But the Tenth Circuit cases relied upon by Plaintiff do not address the proper analysis at Stage Three for the "B" criteria of a mental disorder Listing; nor do they dictate that an ALJ may not consider a claimant's performance of certain activities of daily living in determining whether she meets the "B" criteria. Indeed such a proposition would be counterintuitive. In *Petree v. Astrue*, 260 Fed. Appx. 33 (10th Cir. 2007), the Tenth Circuit acknowledged that under *Thompson* the ability to perform activities of daily living ("ADLs") does not, by itself, prove that a claimant is not disabled, but the court went on to explain that "this is true, but irrelevant" at Step Three when courts "are concerned only with whether the evidence showing [the claimant's] ability to perform ADLs provides substantial evidence for the ALJ's finding that he was no more than moderately restricted *in his ability to perform ADLs*." *Id.* at 39 (emphasis in original).

Plaintiff asserts that the ALJ only provided a general summary of her abilities in the domain of daily living without acknowledging her limitations in performing those tasks. *Doc. 20* at 2. She urges the Court to consider the "specific facts behind the generalities," which she suggests "paint a very different picture." *Id.* To support this

---

[2] Plaintiff has not argued that the ALJ erred in finding that she had no episodes of decompensation of an extended duration.

contention, Plaintiff refers to her own testimony at the hearing that she "1) receives help with cleaning and laundry from her 12 year old daughter; 2) needs reminders from her daughter and mother to follow up on things; 3) receives help from her mother to organize her home and budgeting; 4) receives help from her daughter with dinner preparation otherwise dinner will take her an extra hour and a half to prepare; 5) gets distracted while she is shopping and "can't make decisions on what [she] needs to buy" and will tend to overbuy; and 6) has difficulty getting her children up and going for school in the morning." *Doc. 18* at 4 (citing *AR* at 38-39, 43-45).

Notably, an ALJ may not rely solely on those portions of the record that support the decision to deny benefits, but must also consider evidence that is favorable to the claimant's claim that she is disabled. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). Defendant maintains that the ALJ *did* properly account for the limitations on Plaintiff's activities of daily living, when he determined that she had moderate restrictions in this domain. *Doc. 19* at 6 (citing *Clark v. Apfel*, 141 F.3d 1253, 1256 (8th Cir. 1998); *Wheeler v. Sullivan*, 888 F.2d 1233, 1237-38 (8th Cir. 1989)). This Court agrees.

In discussing the activities of daily living that Plaintiff does perform, the ALJ specifically found that Plaintiff "experiences difficulties while performing daily activities." *AR* at 14. Although he does not elaborate on these "difficulties" within his Step Three analysis, his conclusion follows from Plaintiff's testimony, which the ALJ found credible. While an ALJ is tasked with making a specific finding as to the degree of limitation in each of the four functional areas, *Mushero v. Astrue*, 384 Fed. Appx. 693, 695 (10th Cir. 2010), he need not discuss every piece of evidence, particularly when he accounts for it

in his findings, *see Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Furthermore, in his Step-Four analysis, the ALJ discussed Plaintiff's difficulties in the domain of daily activities in more detail, noting that she experiences "feelings of being overwhelmed by circumstances around her, including domestic management," that she has difficulty organizing her home, and that she "receives help from her mother on a relatively frequent and consistent basis." *AR* at 16-17; *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 730 (10th Cir. 2005) (reasoning that a court should not remand for a more thorough discussion of the Listings when the ALJ's findings at Steps Four and Five justify his Step Three conclusion).

Whether limitations are "marked" is determined by the "nature and overall degree of interference with function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(A)(1). Even if a claimant can perform a "wide range of activities of daily living," a finding of marked limitation may nevertheless be warranted if she has "serious difficulty performing them without direct supervision, or in a suitable manner, or on a consistent useful, routine basis, or without undue interruptions or distractions." *Id.* Here, the evidence and Plaintiff's own testimony suggests that she can perform a wide range of daily living activities, including driving her children to and from school, shopping, cooking, and performing household chores. The more difficult question, though, is whether there is substantial evidence to suggest that she can perform these activities without direct supervision, in a suitable manner, and without undue distractions.

Plaintiff testified that she receives assistance with household chores from both her mother and daughter, with her mother coming to her house once a week to assist with her finances and sometimes to organize her house. *AR* at 43. Plaintiff also

testified that she sometimes requires help with food preparation, because it takes her much longer to prepare dinner on her own, and that she has difficulty making decisions when grocery shopping and tends to overbuy. *Id.* at 44. However, even considering the assistance that Plaintiff sometimes receives, the Court concludes that substantial evidence exists in the record to establish that Plaintiff has only moderate, rather than marked, limitations in this domain. *See Clark v. Apfel*, at 1256 (concluding that the claimant's ability to read, write, hold a driver's license, cook, clean, shop, and care for minor children are activities that support the ALJ's determination that the claimant's mental impairments did not significantly restrict her daily activities).

Second, Plaintiff contends in determining that she had moderate restriction in the area of social functioning, the ALJ ignored evidence suggesting that it is difficult for her to establish friendships, even with her mother, and to express and communicate with others. *Doc. 18* at 5 (citing *AR* at 213, 214, 255). In the ALJ's opinion he concludes, without elaborating, that "[i]n social functioning, the claimant has moderate difficulties." *AR* at 14. Although there is indeed evidence in the record, mostly from Plaintiff's own representations, suggesting that Plaintiff has some difficulty establishing and maintaining friendships, these difficulties do not necessarily warrant a finding of a marked restriction in this domain. In her Functional Report, for instance, Plaintiff explains that she is "generally withdrawn," "wish[es] [she] could be more outgoing," and has difficulty establishing friendships. *AR* at 213-214, 255. The record also contains a medical opinion by Dr. Michalec, which the ALJ discussed in his Stage-Four analysis, that Plaintiff had only *mild* limitations in social functioning. *Id.* at 18; *see also Fischer-Ross*, 431 F.3d at 730. The Court concludes that the ALJ did adequately account for

the evidence that Plaintiff had some difficulty establishing and maintaining relationships when he determined that she had moderate limitations in this domain.

Moreover, there is substantial evidence elsewhere in the record to support the ALJs determination as to this domain, and federal courts in this circuit take an ALJ at his word when he indicates that he has carefully considered the entire record. *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005). For instance, Dr. Snow reported that Plaintiff was cooperative and pleasant and that her "demeanor [could] certainly be seen as an asset." *AR* at 347. Similarly, Dr. Sadek reported that Plaintiff was "alert, pleasant, and cooperative" and that she "presented as socially appropriate but reserved." *Id.* at 351. Dr. Simpson's opinion was that Plaintiff had no limitations to mild limitations in her ability to interact with the public, co-workers, and supervisors. *Id.* at 319.

Third, Plaintiff contends once again that the ALJ, in determining that Plaintiff had "moderate restrictions in the area of concentration, persistence or pace," ignored key evidence that was favorable to her claim. *Doc. 20* at 2-3. Plaintiff asserts that the ALJ failed to discuss Plaintiff's testimony that she cannot multitask or stay focused, that she relies upon her mother to help organize her home and finances, and that when previously employed in a law office she would "zone out" when performing filing. *Doc. 18* at 6 (referencing *AR* at 39-40, 43-44). Significantly, the ALJ did acknowledge evidence that was consistent with Plaintiff's difficulty in multitasking and maintaining focus in his Step-Three analysis when he noted that she "demonstrates functional restriction because of pervasive developmental disorder NOS, especially in the area of maintaining attention." *AR* at 15. He also discussed these particular difficulties

throughout his Stage-Four analysis. *See id.* at 16-18. Yet, as he explained, Plaintiff testified that she uses a computer to access the Internet and to send and receive emails and that she reads magazines, which suggests that she is able to maintain some focus for relatively complex tasks. *See AR* at 38-45. Furthermore, the ALJ noted in his Step-Four analysis that Dr. Michalec opined in her Mental Residual Functional Assessment that Plaintiff had moderate limitations in this domain. *Id.* at 18. This evidence, discussed within the ALJ's Decision, constitutes substantial evidence in support of the ALJ's determination in this domain, and satisfies the Court that the ALJ did not ignore the evidence referenced by Plaintiff.

Plaintiff also argues that the ALJ erred by using her unemployment history against her in analyzing the severity of restriction in the area of concentration persistence, and pace, because the receipt of unemployment compensation benefits and the desire to work does not mean a claimant is not disabled. *Doc. 18* at 6 (citing *Roberts v. Callahan*, 971 F. Supp. 498 (D.N.M. 1987)). While it is true that the receipt of unemployment benefits does not mean that a claimant is able to work, the ALJ's consideration of Plaintiff's unemployment history here was limited to activities that Plaintiff performed during the process of seeking unemployment benefits, such as going online to certify that she was looking for work. *See AR* at 15, 35-36. It was not improper for the ALJ to consider Plaintiff's online activities in seeking unemployment benefits when he evaluated her limitations in this domain. After all, the ability to certify a particular fact on a website is indicative of some ability to concentrate and focus on a task.

In sum, Plaintiff has failed to demonstrate that she satisfies the "B" Criteria of Listings 12.04 and 12.06. The ALJ's determination that Plaintiff did not have marked limitations in two of the four categories outlined in Listings 12.04B and 12.06B is supported by substantial evidence.

**B. The ALJ Properly Considered the Medical Evidence of Record.**

At Step Four, Plaintiff argues that the ALJ improperly weighed the medical opinion evidence and therefore did not have substantial evidence to support his finding as to Plaintiff's RFC. *Doc. 18* at 3. This Court may not reweigh the evidence or substitute its judgment for that of the agency. *See Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

First, Plaintiff asserts that the ALJ improperly gave "significant weight" to the October 1, 1998 psychological evaluation completed by Janeanne Snow, Ph.D.. *Doc. 18* at 7. Plaintiff contends that an evaluation completed 12 years before the alleged onset of disability should not be given significant weight "since the time period does not coincide with any period for which [Plaintiff] was eligible for benefits." *Doc. 18* at 7 (citing 20 C.F.R. § 404.621(a), 20 C.F.R. § 416.335, which provide that an applicant is eligible for benefits for up to 12 months immediately before the month in which their application is filed). Plaintiff also notes that the 1998 report fell outside the relevant time period for a complete medical history under 20 C.F.R. §§ 416.912(d)(2) and 404.1512(d)(2), which provide that it is the responsibility of the Social Security Administration to develop an applicant's "complete medical history for at least the 12 months preceding the month [of application] unless there is a reason to believe that development of an earlier period is necessary." § 416.912.

Plaintiff cites no authority for using these regulatory time periods as a strict guide for determining the weight given to a medical opinion, and the Court is aware of no such authority. Notably, the ALJ specifically discussed the fact that Dr. Snow's opinion was completed 12 years prior to Plaintiff's alleged onset date, indicating that he would have given the opinion more weight had it been more recent. *AR* at 17. The ALJ went on to explain that Dr. Snow's opinion was nevertheless "significant because it is consistent with the claimant's actual work history." *Id.* Dr. Snow predicted that Plaintiff "will do well at her work and in her personal social/life as her support structure allows." *Id.* at 348. The record demonstrates that Dr. Snow's prediction was relatively accurate, as Plaintiff maintained jobs at the Albuquerque BioPark and Walgreens, which ultimately terminated for reasons other than Plaintiff's job performance. *Id.* at 32 (testifying that her part-time position with the BioPark ended because the contract ended); *id.* at 315 (reporting that Plaintiff worked at Walgreens and did the job well until she quit in order to "start a family").

The Court finds that the ALJ appropriately adjusted the weight of Dr. Snow's opinion for remoteness. Because, as the ALJ explained, the report was consistent with the record and particularly with Plaintiff's job history, the Court cannot conclude that the weight the ALJ assigned to Dr. Snow's report should have been something different. *See* 20 C.F.R. §§ 404.1527(c)(4); 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"); *see also Taylor v. Astrue*, 266 Fed. Appx. 771 (10th Cir. 2008) (noting that it is not the province of the court to reweigh evidence and that the ALJ's decision was "sufficiently specific to make clear . . . the weight [he] gave to [the] medical opinion and the reasons for that weight.").

Moreover, the Court cannot find that the ALJ improperly ignored evidence as to why Plaintiff received the evaluation by Dr. Snow. While Plaintiff may desire more specificity in this respect, the Court finds that the ALJ adequately discussed, and clearly considered, that Plaintiff's "employer was concerned about her job performance involving clerical duties in his law practice." *AR* at 17.

Next, Plaintiff submits that the ALJ should have accorded more weight to the neuropsychological evaluation performed by Joseph R. Sadek, Ph.D. *Doc. 18* at 9. The ALJ, in giving less weight to Dr. Sadek's evaluation, reasoned that Dr. Sadek had "overstate[d] the claimant's limitations, as compared . . . to her demonstrated ability to perform activities of daily living, and the other credible evidence of record." *AR* at 17. Plaintiff posits that under Tenth Circuit law a list of activities that a claimant *can* perform is not by itself sufficient evidence that the claimant can perform substantial gainful activity. *Doc. 18* at 9 (citing *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987); *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1983); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir. 1988)). While this legal proposition is true, it does not necessarily follow that an ALJ may not reduce the weight given a medical opinion based in part on its inconsistency with evidence in the record as to a claimant's demonstrated abilities in the domain of daily living. Moreover, Plaintiff's activities of daily living were not the exclusive reason that the ALJ accorded less weight to Dr. Sadek's opinion, as he also explained that Dr. Sadek's view of the claimant's limitations were inconsistent with "other credible evidence of record." *AR* at 17. Indeed, other evidence of record discussed by the ALJ indicates that Plaintiff retained mental residual function to "understand and remember basic tasks; carry out simple and complex tasks; maintain

concentration and attention for routine, uncomplicated tasks; [and] complete a normal workweek without excessive interruptions from psychologically based symptoms." *Id.* at 18. As such, remand is not required on this basis.

Plaintiff posits that if the ALJ truly gave "significant weight" to the August 13, 2011 evaluation of Mark Simpson, PsyD, MAC, LADAC, he would have issued a "fully favorable decision." *Doc. 18* at 11. Plaintiff is particularly concerned that the ALJ omitted her WAIS-IV test results, which she contends should have been included in the ALJ's RFC finding. *Doc. 18* at 12-13 (citing *Frazee v. Barnhart*, 259 F. Supp. 2d 1182 (D. Kan. 2003); *Callins v. Apfel*, 202 F.3d 281 (10th Cir. 2000)). The Court is unpersuaded. Unlike the ALJ in *Callins*, the ALJ here did account for Plaintiff's severe mental impairment in determining her RFC. *Compare Callins*, at *1, 3 (remanding for the ALJ to conduct further analysis of the effect of claimant's IQ scores, where the ALJ did not account for any severe mental impairment in determining the claimant's RFC) *with AR* at 15 (accounting for nonexertional limitations on Plaintiff's RFC related to her severe mental impairments). Moreover, the Court explicitly rejects herein the District of Kansas' analysis in *Frazee* as to the implication of test scores. *See infra* Part C.

As with his assessment of Dr. Sadek's opinion, the ALJ noted that Dr. Simpson's evaluation did not account for some of Plaintiff's demonstrated abilities, such as her ability to drive her children back and forth to school, to use the computer, and to read and understand magazines. *AR* at 18. In the Court's view, Dr. Simpson's opinion does not necessarily warrant a finding of disability, especially when tempered with evidence of Plaintiff's daily activities and other evidence of record. More significant for the Court's

inquiry here, the ALJ's decision was sufficiently specific to make clear the weight that he gave Dr. Sadek's opinion and the reasons for doing so.

### C. Substantial Evidence Supports the ALJ's Determination of No Disability.

At Step Five, the burden shifts to the Commissioner to show that Plaintiff retains the RFC to do other work that exists in the national economy. *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991). RFC is defined by the regulations as what a claimant can do even given her limitations. *Davidson v. Secretary of Health and Human Servs.*, 912 F.2d 1246, 1253 (10th Cir. 1990). The agency's burden is met if "the decision is supported by substantial evidence." *Gossett*, 862 F.2d at 804.

Before an ALJ may rely on the testimony of a vocational expert, he must ask the expert how her testimony corresponds with the DOT and must obtain a "reasonable explanation" for any inconsistencies. *Madron v. Astrue*, 311 Fed. Appx. 170, 175 (10th Cir. 2009). The Social Security Administration has also addressed potential conflicts between the DOT and the testimony of vocational experts, ruling, among other things, that when a vocation expert "provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the [DOT]. SSR 00-4p, 2000 WL 1898704 (2000).

Here, the ALJ determined that the vocational expert's testimony was consistent with information obtained in the DOT. *AR* at 19. Plaintiff maintains, however, that there is conflict between the vocational expert's testimony and the DOT that required the ALJ to investigate and explain his resolution of the conflict before relying on the vocational expert's testimony to support the denial of benefits to Plaintiff. *Doc. 20* at 4

(citing *Haddock v. Apfel*, 196 F.3d 1084, 1089 (10th Cir. 1999); *Frazee v. Barnhart*, 259 F. Supp. 2d 1182 (D. Kan. 2003); and SSR 00-4p).

The vocational expert testified that there were three occupations available to Plaintiff: a vehicle cleaner, a kitchen worker, and a grounds keeper. *AR* at 19. Plaintiff contends, however, that the DOT descriptions mandate that these three occupations were not available to Plaintiff due to her extremely low aptitudes. *Doc. 18* at 14-15. More specifically, the Verbal Aptitude requirement for each of the three occupations was "Level 4 - Lowest 1/3 Excluding Bottom 10%." Plaintiff insists that this requirement exceeds her abilities (i.e. verbal reasoning abilities in the "low average range" and 10th percentile, *see AR* at 316-17). Similarly, the General Learning Ability, defined as a general ability to learn, reason, and make judgments requirement was also "Level 4 - Lowest 1/3 Excluding Bottom 10%" for each of the three occupations. According to Plaintiff, this, too, exceeds her overall thinking and reasoning abilities, which were measured in the 4th percentile. *See AR* at 316. Additionally, Plaintiff's ability to sustain attention, concentrate, and exert mental control was in the 9th percentile, and her ability to process simple or routine visual material without making errors was in the 0.3 percentile. *AR* at 317. Plaintiff submits that because the ALJ neither investigated nor provided any explanation for this conflict between the vocational expert's testimony and the DOT, remand is warranted. *Doc. 18* at 15.

The percentiles referenced by Plaintiff were the product of a WAIS-IV test performed by Dr. Simpson during a Status Consultative Examination. *AR* at 314. The ALJ indicated in his Decision that he gave Dr. Simpson's medical opinion, which included the test results, "significant weight." *Id.* at 18. At the same time, he noted that

the opinion "did not account for some of [Plaintiff's] demonstrated abilities in excess of those reported, such as her ability to drive her children back and forth to school, to use the computer, and to read and understand magazines that interest her." *Id.*

Defendant argues, relying upon case law from the Fifth and Eighth Circuits, that there was an "adequate basis" for the ALJ to rely upon the vocational expert's "more specific" testimony, even if there were implicit conflicts with the categorical requirements listed in the DOT. *Doc. 19* at 11-12 (citing *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) and *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000)). The Tenth Circuit has not applied the same standard as the Fifth and Eight Circuits, however. Indeed, under Tenth Circuit law, an ALJ may only rely upon the testimony of a vocational expert if he first obtains a "reasonable explanation" for any inconsistencies with the DOT. *Haddock*, 196 F.3d at 1087.

Thus, the threshold inquiry is whether a conflict exists between the vocational expert's testimony and the requirements under the DOT. The Tenth Circuit has not determined whether such a conflict exits under circumstances such as those presented here – that is, when the detailed requirements under the DOT description of jobs, such as the requirements of General Learning Ability, appear to exceed those indicated by a claimant's test scores. *Wilson v. Astrue*, 834 F. Supp. 2d 1295 (N.D. Okla. 2011) (noting that "this is a novel argument that has apparently never been presented to the Tenth Circuit"). Moreover, district courts in this circuit have reached different conclusions.

Plaintiff relies upon *Frazee v. Barnhart*, 259 F. Supp. 2d 1182, 1199 (D. Kan. 2003), in which the District of Kansas concluded that substantial evidence did not

support the ALJ's decision, because the ALJ failed to elicit testimony from the vocational expert to explain "actual and apparent conflicts between the VE evidence and information contained in the DOT." *Id.* at 1199.  There, the court found an apparent conflict in part because the DOT description of the subject jobs required a General Learning Ability that excluded the "Bottom 10% Low Degree of Aptitude Ability," and the plaintiff's full scale IQ of 79 was only in the 8th percentile.  *Id.* at 1198.

The Northern District of Oklahoma, in *Wilson v. Astrue*, 834 F. Supp. 2d 1295 (N.D. Okla 2011), reached the opposite conclusion, explicitly rejecting the reasoning of the court in *Frazee*.  In *Wilson*, the claimant tested below the 10th percentile in many areas; however, the DOT description of the jobs identified by the vocational expert required General Learning Ability, Verbal Aptitude, Numerical Aptitude, and Spatial Aptitude at "Level 4 – Lowest 1/3 Excluding Bottom 10%."  *Id.* at 1303.  Faced with this purported conflict, the Northern District of Oklahoma concluded that it was inaccurate to correlate the claimant's borderline intellectual functioning with aspects of the DOT job descriptions, such as General Learning Ability.  *Id.*  The court found support for this conclusion in decisions from three other district courts, which each rejected similar arguments by claimants.  *See, e.g., Strickland*, No. 10cv306 FTM-DNF, 2011 WL 4048985 (M.D. Fla. Sept. 13, 2011); *McNemar v. Astrue*, No. 10cv2079, 2011 WL 5554051 (N.D. Ohio Aug. 29, 2011); *Vasquez v. Astrue*, No. 08cv5305-OP, 2009 WL 3672519, at *3 (C.D. Cal. Oct. 30 2009); and *Gibson v. Astrue*, No. 06cv5046 JC, 2008 WL 5101822, at *5-6 (C.D. Cal. Nov. 30, 2008).

This Court finds persuasive the reasoning of those courts that have declined to find a conflict, or apparent conflict, between a vocational expert's testimony and the

DOT under similar circumstances. As in *Wilson* and the cases cited therein, Plaintiff has offered no authority to establish that the General Learning Ability scale is directly correlated to the particular test scores at issue, those produced by the WAIS-IV exam. Further, "nothing in the DOT suggests that a Level 4 [General Learning Ability] excludes those within the bottom 10% of *intellectual functioning*, let alone the bottom 10% of the intellectual functioning of the *general* population." *Gibson,* No. 06cv5046 JC, 2008 WL 5101822, at *5 (emphasis in original).

The ALJ included certain non-exertional limitations in his RFC determination, such as the performance of only simple tasks, working primarily with things rather than people, and maintaining concentration, pace and persistence for two-hour periods. *AR* at 15. Plaintiff provides no legal authority to suggest that an individual with this particular RFC could not perform jobs at a Level 4 General Learning Ability. Because the Court finds no conflict between the responses given by the vocational expert and the requirements of the DOT, there was no need for the ALJ to obtain an explanation for inconsistencies pursuant to SSR00-4p and Tenth Circuit law. As such, this purported conflict is not grounds for remand.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 19)* is denied and this matter is dismissed with prejudice.

**IT IS FURTHER ORDERED** that a final order enter concurrently herewith.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent